Scott E. Gizer, Esq., Nevada Bar No. 12216
  *sgizer@earlysullivan.com*
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
8716 Spanish Ridge Avenue, Suite 105
Las Vegas, NV 89148
Telephone:  (702) 331-7593
Facsimile:  (702) 331-1652

Attorneys for Plaintiff
GENE DARROUGH

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| GENE DARROUGH, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SOC LLC, A Delaware limited liability company registered and doing business in Nevada as SOC NEVADA LLC; SOC-SMG, Inc., a Nevada Corporation; DAY & ZIMMERMAN, INC., a Maryland corporation; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 2:20-cv-01951-CDS-BNW<br><br>**AMENDED COMPLAINT**<br><br>**(JURY DEMAND)**<br><br>**ARBITRATION EXEMPTION CLAIMED:**<br><br>1. **PROMISSORY FRAUD**<br>2. **NEGLIGENT MISREPRESENTATION**<br>3. **UNJUST ENREICHMENT- FRAUD**<br>4. **MONEY HAD AND RECEIVED**<br>5. **BREACH OF CONTRACT**<br>6. **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br>7. **QUANTUM MERUIT**<br>8. **UNJUST ENRICHMENT – BREACH OF CONTRACT** |

Plaintiff Gene Darrough ("Plaintiff") alleges as follows:

**NATURE OF THE ACTION**

1. This is an action by Gene Darrough who was employed in Iraq as an armed guard for a private security contractor whose corporate name, SOC, is an acronym for its nominal core mission. "Securing Our Country." Leading to this lawsuit, SOC's core mission changed from "Securing Our Country to "Securing our Compensation" when it began to recruit employees to

1
**AMENDED COMPLAINT**

provide security services in Iraq under false promises with respect to the schedule those armed guards would work. The falsity of those representations was not revealed to Plaintiff until after he began working at his permanent post at Log Base Seitz ("LBS"). Once there, due to a lack of adequate staffing driven by corporate greed, SOC inserted Plaintiff into a situation that required he work in ultra-hazardous conditions in excess of 12 hours per day without meal or rest periods, seven days per week. This directly violated not only the representations made by SOC to Plaintiff, but its contract with the United States of America's Department of Defense, which requires SOC to "manage their work force in a manner that does not require any guard or guard team leader to work any longer than one 12 hour shift per 24 hour period and not more than 72 hours per week" (i.e, the "6/12 Schedule.") SOC thus subjected Plaintiff and SOC's clients, including the United States of America, to undue risk by jeopardizing the physical and psychological condition of its armed guards, including Plaintiff, in the course of ultra-hazardous activities. To conceal its illicit and dangerous conduct, SOC systematically falsified employee time sheets to reflect time off where there was none. This action seeks redress for SOC's egregious violations.

**PARTIES**

2.  Defendant SOC LLC d/b/a SOC Nevada LLC is a Delaware limited liability company with its principal place of business in Nevada. Defendant SOC LLC is owned by Defendants SOC-SMG, Inc. and Day & Zimmerman, Inc.

3.  Defendant SOC-SMG, Inc., is a Nevada corporation with its principal place of business in Nevada.

4.  Defendant Day & Zimmerman, Inc. is a Maryland corporation with its principal place of business in Pennsylvania (hereinafter, Defendants SOC LLC, SOC-SMG, Inc. and Day & Zimmerman, Inc. are collectively referred to as "SOC" or Defendants.")

5.  SOC, which stands for "Securing Our Country," provides worldwide security services for individuals, domestic facilities, nuclear power plants and military bases.

6.  Plaintiff is an Illinois resident who was employed by SOC as an armed guard from January to December 2010 at LBS near Baghdad, Iraq.

7.  Plaintiff entered into a written employment agreement with SOC.



2
**AMENDED COMPLAINT**

## JURISDICTION AND VENUE

8. Pursuant to the Ninth Circuit's ruling in *DeFiore v. SOC LLC*, 85 F.4th 546, 554 (9th Cir. 2023), jurisdiction is proper pursuant to 28 U.S.C. § 1442(a)(1).

9. Venue is proper in Clark County, Nevada, because the subject written employment agreements were entered into in Nevada, and Defendants reside in Clark County.

## BACKGROUND

10. For several years, SOC had a pattern and practice of recruiting former military personnel and other qualified individuals for employment as "Armed Guards" in the "SOC Iraq Mission." The SOC Iraq Mission consisted of the provision of private security services at approximately 16 sites in Iraq.

11. LBS was a base located near Baghdad. Plaintiff is informed and believes that one of the perquisites to working at LBS was that an Armed Guard have a specific security clearance.

12. Plaintiff is informed and believes, and on that basis alleges, that Defendants submitted a written bid in order to secure the right to supply Armed Guards in the SOC Iraq Mission in conjunction with the Theater Wide Internal Security Services II ("TWISS II") contract proffered by the United States Government.

13. Plaintiff is informed and believes, and on that basis alleges, that Defendants utilized a procedure of "bidding to the man" in order to provide the lowest possible bid to the government. "Bidding to the man" is a procedure where only the exact number Armed Guards needed for each of the guard positions are bid, without any allowance for rest days and/or sick or other types of leave. As such, Defendants ensured that they would have the lowest possible bid for the TWISS II contract, while at the same time ensuring that bases such as LBS would be undermanned throughout the duration of the SOC Iraq Mission.

14. As a result of the process of "bidding to the man," Defendants created a precarious and unsustainable position for themselves – the bases set to be protected by its armed guards would be consistently short of the number of individuals required to fully man the security checkpoints and posts. The end result was that Plaintiff was forced to bear the burden of Defendants' impropriety and was made to work in excess of 6 days per week and 12 hours per

day in order to overcome the understaffing.

15. Plaintiff answered a job posting on an online board which informed him about the above employment opportunity, conditioned upon, among other things, Plaintiff's travel to Nevada, to enter into his written employment agreement.

16. Notwithstanding Defendants' knowledge that they would be unable to comply with the TWISS II contract, Defendants misrepresented the nature of the employment to Plaintiff, including Plaintiff's work schedule and the number of days of vacation that would be available to Plaintiff during his employment. The misrepresentations occurred in multiple ways, and at multiple times, as follows:

   a. First, memoranda drafted by Defendants outlining their recruitment process included a requirement that each candidate be called directly. In order to comply with the requirement that each recruit be called, and because there were limited recruiters, Defendants set up group recruiting calls. The recruiters initially included the following individuals employed by Defendants: Tom Wilson, Angela Broyles, and Paul Bogart (the "Recruiters"), all of whom were employed by Day & Zimmerman.. The Recruiters developed a call script in 2009 as a response to concerns that information in the calls to recruits was not being conveyed consistently. Accordingly, the call scripts set forth bullet points that each Recruiter was required to explain during each group call. The Recruiters always discussed the 12 hours a day, 6 days a week schedule with recruits, so the call script included a bullet point as a topic to be discussed.

   b. Second, all recruits, including Plaintiff, were required to attend an in-person orientation in either Chicago or Nevada (although the majority attended orientations in Nevada) prior to deployment. During the orientation, Defendants' employees, including Lisa Santin (also employed by Day & Zimmerman) and Wendy Lang again falsely promised armed guards would work a 6/12 schedule once they arrived in Iraq.

   c. Plaintiff's recollection following the group recruiting call and the orientation in

Nevada, was that he was supposed to work a minimum of 40 hours a week, and because it was an austere environment, he would not be expected to work more than 45 hours per week.

d. Third, upon arrival in Iraq, and before he was formally assigned to and sent to LBS, Plaintiff was told that he could expect a 6/12 schedule.

e. Fourth, Plaintiff's employment agreement provides that he could expect to "perform duties and responsibilities that are customary for Employee's position." Based upon this provision in the employment agreement, and representations before and after his execution of that agreement regarding the 6/12 schedule, Plaintiff reasonably believed that he would be limited to working no more than 6 days per week and 12 hours per day.

17. Based upon the above, the misrepresentations made to Plaintiff occurred on the following approximate dates: within a few months of, immediately prior to, and in, January 2010.

18. Defendants' fraud did not end with the recruitment process. After Plaintiff began working at LBS, and Defendants failed to adhere to the promised 6/12 schedule, complaints were made to management. In order to induce armed guards, including Plaintiff, to continue working after Defendants failed to meet their obligations to adhere to the 6/12 schedule, Defendants continued to represent that the excessive work schedules were an anomaly due to staffing shortages and Plaintiff could expect the 6/12 schedule going forward, even though the shortages were actually being caused by intentional understaffing by Defendants.

19. During his one-year assignment in Iraq, Plaintiff was required by SOC to work in excess of 12 hours per day, seven days per week, without meal or rest periods, and without any overtime compensation. This directly violated SOC's contract with the United States of America's Department of Defense, which required that SOC "manage their work force in a manner that does not require any guard or guard team leader to work any longer than one 12 hour shift per 24 hour period and not more than 72 hours per week."

20. To conceal these violations, during Plaintiff's one-year assignment in Iraq, Defendants routinely falsified employee time sheets to reflect time off when there was none and



5
**AMENDED COMPLAINT**

to show that Plaintiff, and others similarly situated, worked only 12 hours per day when in fact they worked in excess of 12 hours each day. Indeed, Plaintiff is informed and believes, and based thereon alleges that SOC-SMG, Inc. and Day & Zimmerman, Inc. made demands upon SOC LLC to falsify the time records so that they were not found to have violated their contract with the Department of Defense, and ratified and approved the falsified records knowing them to be false.

## THE JOINT VENTURE

21. After a lengthy courtship, SOC-SMG, Inc. ("SOC-SMG") and Day and Zimmerman, Inc. ("DZI") signed a letter of intent to enter into a joint venture on September 14, 2007. Thereafter, a period of intense due diligence ensued, culminating in the execution of a Contribution Agreement on November 8, 2007, whereby both DZI and SOC-SMG would contribute certain of their own companies to the new joint venture, SOC LLC, and would share in the profits and losses of the joint venture.

22. All members of a joint venture are jointly and severally liable to third persons for wrongful acts committed in furtherance of the joint enterprise. Moreover, under principles of law related to joint ventures, the negligence or fraud of one venturer, while acting within the scope of the enterprise, may be imputed to co-venturers so as to render the latter liable for the injuries sustained by third persons as a result of the negligence or fraud. See NRS 87.150 (all partners jointly and severally liable).

23. Here, not only did DZI and SOC-SMG actively engage in the fraudulent and negligent conduct alleged herein, DZI and SOC-SMG are liable as joint venturers because the wrongful acts alleged herein were done by DZI and SOC-SMG in furtherance of, and within the scope of, the joint venture.

## FIRST CLAIM FOR RELIEF
## PROMISSORY FRAUD
### (By Plaintiff and against all Defendants)

24. Plaintiff realleges and incorporates by reference herein each of the allegations alleged in paragraphs 1 through 24, above.

25. In order to induce Plaintiff to accept and continue employment with them,

1  Defendants affirmatively promised Plaintiff that he would work no more than 12 hours a day, 6
2  days a week.

3        26.    Defendants' representations as set forth above were false and fraudulent, the
4  Defendants knew that the representations were false and fraudulent at the time they were made,
5  and Defendants did not intend to honor those representations.

6        27.    Plaintiff and was not aware of the falsity of Defendants' representations, and
7  reasonably and actually relied on them in accepting and continuing employment with Defendants.

8        28.    As a direct and proximate result of Defendants' false and fraudulent
9  misrepresentations, Plaintiff and has sustained damages in an amount according to proof at trial.

10       29.    Plaintiff is informed and believes, and on that basis alleges, that Defendants' false
11 and fraudulent misrepresentations were done with oppression, fraud and malice and in conscious
12 disregard of Plaintiff's rights, with the intent to cause injury to Plaintiff. Plaintiff is therefore
13 entitled to an award of punitive damages against Defendants.

## SECOND CLAIM FOR RELEIF

## NEGLIGENT MISREPRESENTATION

**(By Plaintiff against all Defendants)**

17       30.    Plaintiff realleges and incorporates by reference herein each of the allegations
18 alleged in paragraphs 1 through 30, above.

19       31.    In order to induce Plaintiff to accept and continue employment with them,
20 Defendants affirmatively promised Plaintiff that he would work no more than 12 hours a day, 6
21 days a week.

22       32.    Defendants misrepresentations as set forth above were false, were false at the time
23 they were made, and the Defendants made these misrepresentations without reasonable ground for
24 believing them to be true when they were made.

25       33.    Plaintiff was not aware of the falsity of Defendants' representations, and
26 reasonably and actually relied on them in accepting and continuing employment with Defendants.

27       34.    As a direct and proximate result of Defendants' false and fraudulent
28 misrepresentations, Plaintiff has sustained damages in an amount according to proof at trial.



7
**AMENDED COMPLAINT**

## THIRD CLAIM FOR RELIEF

## UNJUST ENRICHMENT – PROMISSORY FRAUD

**(By Plaintiff against all Defendants)**

35. Plaintiff realleges and incorporates by reference herein each of the allegations alleged in paragraphs 1 through 35, above.

36. By virtue of Defendants' conduct as alleged herein, Defendants were enriched by the Plaintiff's conduct, and did not compensate fully. Defendants even falsified time sheets in an attempt to cover up their wrongdoing.

37. The circumstances are such that it would be inequitable to allow Defendants to retain the excess benefit from Plaintiff's conduct without paying fair value for it.

38. As a direct and proximate result of Defendants' wrongful withholding of funds collected that should have been paid to Plaintiff, Plaintiff has sustained damages in an amount according to proof at trial.

39. Plaintiff is informed and believes, and on that basis alleges, that Defendants' unjust withholding of monies and enrichment therefrom was done with oppression, fraud and malice and in conscious disregard of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages against Defendants.

## FOURTH CLAIM FOR RELIEF

## MONEY HAD AND RECEIVED

**(By Plaintiff against all Defendants)**

40. Plaintiff realleges and incorporates by reference herein each of the allegations alleged in paragraphs 1 through 40, above.

41. Defendants received, and continue to receive, substantial amounts of money from the United States government for the retention of security and other personnel in Iraq. Defendants were obligated to employ enough guards to adequately protect United States bases in Iraq, including LBS, but were not permitted to require any guard to work more than 72 hours per week.

42. Defendants regularly required armed guards at LBS, including Plaintiff, to work more than 72 hours per week, and therefore were able to reduce the number of guards they

8
AMENDED COMPLAINT

1  employed, and pocketed the profits from their refusal to adequately staff their guard forces.

2      43. Defendants forged time sheets for Plaintiff to reflect 72-hour workweeks for Plaintiff, rather than recognize the need to hire, and pay, more guards. Accordingly, Defendants received compensation that they wrongfully retained at the expense of Plaintiff.

    44. The circumstances are such that it would be inequitable to allow Defendants to retain the excess funds that they should have spent on hiring more guards or paying Plaintiff and for his excess time. Equity, therefore, demands that Defendants pay the money they collected on behalf of Plaintiff to Plaintiff since it was intended for his benefit.

    45. As a direct and proximate result of Defendants' wrongful withholding of funds collected that should have been paid to Plaintiff, Plaintiff has sustained damages in an amount according to proof at trial.

    46. Plaintiff is informed and believe, and on that basis allege, that Defendants' wrongful withholding of funds was done with oppression, fraud, and malice and in conscious disregard of Plaintiff's rights, with the intent to cause injury to Plaintiff. Plaintiff is therefore entitled to an award of punitive damages against Defendants.

## FIFTH CLAIM FOR RELIEF

## BREACH OF CONTRACT

### (By Plaintiff against all Defendants)

    47. Plaintiff realleges and incorporates by reference herein each of the allegations alleged in paragraph 1 through 73, above.

    48. Plaintiff entered into a written contract with SOC in the form of an employment agreement, wherein Plaintiff agreed to employment with SOC as a guard for United States bases in Iraq, with Plaintiff ultimately being stationed at LBS.

    49. At all times material hereto, Plaintiff performed fully his contractual obligations, namely- he worked in Iraq as an armed guard.

    50. At all times material hereto, SOC was contractually obligated to ensure that Plaintiff "perform duties and responsibilities that are customary for the Employee's position." Additionally, SOC was contractually obligated by its own contract with the United States

1  Government to limit its guards to work no more than 12 hours in a day and 72 hours a week. This obligation was incorporated into Plaintiff's employment agreement as it was expressly for his benefit.

51. SOC required Plaintiff to work more than 12 hours a day, and more than 72 hours a week.

52. As a direct result of SOC's failure and refusal to perform its obligations under the terms and provisions of Plaintiff's employment agreement, Plaintiff has sustained damages in an amount according to proof at trial.

53. Plaintiff is informed and believe, and on that basis allege, that SOC's breach of contract was done with oppression, fraud and malice and in conscious disregard of Plaintiff's rights, with the intent to cause injury to Plaintiff. Plaintiff is therefore entitled to an award of punitive damages against Defendants.

## SIXTH CLAIM FOR RELIEF

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (By Plaintiff against all Defendants)

54. Plaintiff realleges and incorporates by reference herein each of the allegations alleged in paragraphs 1 through 54, above.

55. Plaintiff entered into a written contract with SOC in the form of the employment agreement, wherein Plaintiff agreed to employment with SOC as a guard for United States bases in Iraq, with Plaintiff ultimately being stationed at LBS.

56. At all times material hereto, Plaintiff performed fully his contractual obligations, namely – to work in Iraq as an armed guard.

57. At all times material hereto, SOC was contractually obligated to ensure that Plaintiff "perform duties and responsibilities that are customary for the Employee's position." Additionally, SOC was contractually obligated by its own contract with the United States Government to limit its guards to work no more than 12 hours in a day and 72 hours a week. This obligation was incorporated into Plaintiff's employment agreement as it was expressly for his benefit.

58. SOC unfairly interfered with Plaintiff's right to receive benefits of the contract, namely by failing to abide by the requirement he not work more than 6 days a week, 12 hours per day.

59. As a direct and proximate result of SOC's failure to act fairly and in good faith, Plaintiff has sustained damages in an amount according to proof at trial.

60. Plaintiff is informed and believes, and on that basis alleges, that SOC's breach of the implied covenant of good faith and fair dealing was done with oppression, fraud and malice and in conscious disregard of Plaintiff's rights, with the intent to cause injury to Plaintiff. Plaintiff is therefore entitled to an award of punitive damages against Defendants.

## SEVENTH CLAIM FOR RELIEF

## QUANTUM MERUIT

**(By Plaintiff against all Defendants)**

61. Plaintiff realleges and incorporates by reference herein each of the allegations alleged in paragraphs 1 through 61, above.

62. SOC requested by its words and conduct that Plaintiff perform services for SOC, namely, by serving as an armed guard in Iraq at LBS and for the benefit of SOC. SOC further demanded that Plaintiff work above and beyond his agreed-upon hours with limits of 12 hours per day and 72 hours per week.

63. At all times material hereto, Plaintiff fully performed his obligations as requested by SOC, and further worked beyond 12 hours a day and 72 hours per week.

64. SOC did not pay, and has not paid, Plaintiff for the hours he worked as an armed guard beyond the ordinary limits of 12 hours per day and 72 hours per week.

65. SOC received substantial benefit from this extra work put in by Plaintiff.

66. Plaintiff is are therefore entitled to compensation for his services in an amount at least equal to one- and one-half times the hourly wage of $17.36, multiplied by the number of extra hours worked by Plaintiff.

67. Therefore, SOC owes and should pay Plaintiff an amount according to proof at trial.



## EIGHTH CLAIM FOR RELIEF

## UNJUST ENRICHMENT- BREACH OF CONTRACT

**(By Plaintiff against all Defendants)**

68. Plaintiff realleges and incorporates by reference herein each of the allegations alleged in paragraphs 1 through 68, above.

69. By virtue of SOC's conduct as alleged herein, and Plaintiff's performance of his obligations as an armed guard, SOC was unjustly enriched by Plaintiff's conduct, and did not compensate Plaintiff fully.

70. The circumstances are such that it would be inequitable to allow Defendants to retain the excess benefit from Plaintiff's conduct without paying fair value for it.

71. As a direct and proximate result of Defendants wrongful withholding of funds collected that should have been paid to Plaintiff, Plaintiff has sustained damages in an amount according to proof at trial.

72. Plaintiff is informed and believes, and on that basis alleges, that Defendants' unjust withholding of moneys and enrichment therefrom was done with oppression, fraud and malice and in conscious disregard of Plaintiff's rights, with the intent to cause injury to Plaintiff. Plaintiff is therefore entitled to an award of punitive damages against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court:

1. For a Judgment awarding Plaintiff:

   a. All common law damages as well as statutory remedies for the amount of wages and other compensation Plaintiff should have received for working as an armed guard for Defendants in Iraq, including overtime and quantum meruit wages, and disgorgement and/or restitution of the unjust enrichment and money had and received by Defendants;

   b. Pre-Judgment Interest;

   c. Punitive Damages; and

   d. Attorney's fees, costs and expenses to the extent permitted by law.

2. For such other and further relief as the Court may deem just and proper.

Dated: August 13, 2024

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: _/s/ - Scott E Gizer_
Scott E. Gizer
Attorneys for Plaintiff
GENE DARROUGH



13
**AMENDED COMPLAINT**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filling to the Electronic Service List for this Case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ *Valerie Segura*
VALERIE SEGURA
An Employee of EARLY SULLIVAN
WRIGHT GIZER & McRAE LLP

